[Civ. No. 16493.   Second Dist., Div. Three.   Mar. 23, 1949.]

MINNIE BROWN, Respondent, v. JEANETTE VOLZ, Appellant.

Melville R. Adams for Appellant.

Edward P. Hart for Respondent.

VALLÉE, J.—Defendant appeals from a judgment quieting title in plaintiff to a parcel of real property situated in Pasadena, and from an "order denying defendant's motion to amend her answer." ■ Since no appeal lies from the latter order (Code Civ. Proc., § 963), it is dismissed.

In October of 1942, plaintiff purchased a residence in Pasadena from a Mr. and Mrs. James Frush for $5,250. She made a down payment of $2,050. The balance, $3,200, was evidenced by a promissory note, dated October 7, 1942, signed by plaintiff and defendant and secured by a deed of trust upon the property executed by plaintiff and defendant as trustors. A deed to the real property was executed by the sellers and named plaintiff and defendant "as joint tenants."

The circumstances surrounding the activity of defendant in the transaction stems from a life-long friendship between herself and her mother with plaintiff. Plaintiff is a widow, 74 years of age, and a retired school teacher, having a retirement income of "about" $97 per month. She and defendant's mother had been schoolmates and close friends for many years and she had known defendant practically all of her life. Defendant and her mother resided in Mt. Vernon Tract in East Pasadena. Plaintiff desired to live near them and attempted to purchase a residence in the same tract. The deal fell through, whether due to a delay in selling her Glendale property or because a loan company would not accept her signature alone on a note, is not clear. In any event, the property owned by Mr. and Mrs. Frush was found for plaintiff by Miss Peterson, a real estate saleswoman, and Mrs. Gott, a real estate broker. It was located almost across the street from the home of defendant and her mother. There was a loan commitment on it which required a cosigner with plaintiff because of her age and small income. At first Mr. and Mrs. Frush wanted cash, but subsequently decided to carry the paper

themselves. Mrs. Gott, the broker, testified ". . . we contacted the Frushes and talked to them about taking the deal, and we suggested if it was safe for the loan company to make the deal with a co-signer on it it would be safe for them to take the same deal. . . . There was no effort to make the Frushes take the place without the co-signer." Plaintiff purchased the property. Plaintiff and defendant signed the note and deed of trust. The deed read to them as joint tenants. Plaintiff went into, and ever since has been in sole possession of the property, has made the monthly payments of $27.20 due on the note, and has collected and retained all rentals from roomers. Defendant has never made any contribution either toward the purchase price of the property or its upkeep. In the latter part of 1946, plaintiff wanted to make a will. On January 1, 1947, she wrote defendant, explained that her name "as co-partner on the mortgage deed kinda complicates matters" and requested defendant to sign over a quitclaim deed, leaving plaintiff "as sole owner." Defendant refused to do anything about the matter and on July 15, 1947, plaintiff brought this action to quiet title and revoke an oral trust.

The court, among other things, found: the note was executed to evidence the balance of the purchase price and the deed of trust was given to secure this balance; defendant was named as a "grantee" and "as a joint tenant with the plaintiff solely because the plaintiff and the defendant believed . . . defendant would incur a personal obligation to pay the amount of said note if it was not paid by the plaintiff, . . . and in order that the defendant might be protected and be secured against her liability upon said note . . . it was necessary for her to be named as grantee in said deed of trust"; the plaintiff and defendant "were operating under a mutual mistake of law and fact, and that in truth the defendant incurred no liability or responsibility upon said promissory note, or under the terms of said deed of trust, and that the sole remedy of the payee of said promissory note or of any holder thereof would be to foreclose said deed of trust, and that they would not be entitled to any deficiency judgment against the defendant Volz, unless she consented to be sued upon said note without foreclosure of said deed of trust"; "that it was not the intent of the plaintiff and the defendant that the defendant have any right, title or interest in said property, other than by way of security for her personal obligations upon said promissory note and under said deed of trust, and . . . as the

defendant has no obligation or any liability upon said note or deed of trust . . . she is not and has not been at any time entitled to any interest in said real property or to the possession thereof''; defendant was ''an accommodation maker upon said promissory note without consideration, and that she has no liability whatsoever upon said note''; it was ''not the intention of the plaintiff to make a gift to the defendant of any interest or right in or to the real property in question, and that the plaintiff did not make a gift of any interest or right in said property to said defendant.'' From these facts the court concluded that plaintiff was the owner of the property, that defendant had no ''right, title or interest'' therein, that she ''at all times held a record title in said property as a joint tenant with the plaintiff, in trust for the plaintiff,'' and that plaintiff was entitled to a decree quieting title against defendant.

The sole question presented is whether the evidence supports the findings.

Mrs. Gott, the real estate broker consummating the deal, testified: ''After we got the thing ironed out with the Frushes, Mrs. Brown asked us to go with her over to the Volzes and talk to them. . . . Now, I heard it stated here that the joint tenancy deed was given in return for her signing the note. That is not true. Mrs. Volz [defendant] asked quite a lot about liability and so forth . . . about what it meant to go on paper, and I said of course the object of a co-signer on a note was to make the seller feel safe if payments were not made by one party, because then the other party could do it, and I did state quite clearly there would be no deficiency judgment if she did not make the payments. . . . I did not point out to Mrs. Volz in the discussion of any risk she might run. I said that the object of signing as a co-signer was while she didn't have to make the payments the object behind it was that the co-signer could make the payments. . . . Well, you have no idea how close that relationship was there. It was just like a mother and daughter trying to get together to help on the matter of her getting that place. And I said to Mrs. Volz being in the joint tenancy deed suppose Mrs. Brown got ill, I didn't think Mrs. Volz would be willing to see her lose the home because of the close relationship there, and suppose she had to make the payments over a period of time, by being in the joint tenancy deed she would be protected so she could put in a claim for anything she advanced. . . . So the joint tenancy deed was for the purpose of protect-

ing Mrs. Volz in case she did make payments. . . . THE COURT: What was your statement to Mrs. Brown and Mrs. Volz as to the nature of her signing, that she was to be a co-maker or what? A. Well, I signed her on a note. I explained to her that the loan company or anyone wouldn't want to make a loan of that size on that priced property to an elderly lady with that limited income without having a younger person sign the note with her. I think that was the words I used, 'Sign the note with her.' ''

The plaintiff testified: ''Q. . . . when did you first learn that through a joint tenancy the survivor took the whole property? A. Well, I don't know when that came to my attention, but I will go back and say this, when Jeanette went on there there was nothing serious to me about it. It was only a matter of a friendly deed is all; that she would do it in order to help me get a home. . . Q. . . . Did Jeanette Volz or anyone else prior to the execution of these instructions at the bank, tell you Jeanette Volz would have one-half interest to the property if you signed such instructions? A. Well, I believe so, but it didn't mean anything to me, only that Jeanette was doing á kind act to me. THE COURT: What was the kind act that she was doing? A. Putting her name on that paper so I would be in a position to buy a home. You heard it stated, you know, that I was along in years and didn't have sufficient financial backing, and anyone would think it was a safer bet if they had somebody else on. . . . THE COURT: . . . did you have any intention of making a gift of anything to Miss Volz at the time you took the deed in the two names? Did you intend to give her an interest in the property at that time? A. No, it never occurred to me, nothing like that.''

Miss Peterson, the real estate saleswoman, in answer to a question by the court as to whether it was explained to defendant ''that she was doing this as an accommodation,'' replied, ''It was understood it was an accommodation, and that was all. There was no promises of any kind. It was a friendly, almost a mother and daughter relation.'' She further testified: ''Q. Do you know the customs of loan companies and lenders as to accommodation parties? A. Yes, I know more about them now, though, than I did at that time. Q. It is not necessary for an accommodation signer to be on the deed as a joint tenant, is that not correct? A. That is something I didn't understand at that time. THE COURT: That is true, however. A. I believe it is. THE COURT: You have found that

out, have you? A. I have found that out, yes. Q. But you believed that to be true. A. I believed it to be true at that time."

Mrs. Gott further testified: "Q. Do you know what the custom of building and loan companies is as to accommodations? A. Well, the building and loan companies requires a younger person to sign on the trust deed and note, both. Q. They require a separate guarantee by the younger person, do they not? A. Well, no, it is right along on the trust deed and the note. Q. Do they require that they become one of the purchasers, too? A. No, it is not necessary for a person who signs a note and a trust deed to appear in the deed as a joint tenant. Q. Then why was it you asked that to be done here? A. Well, I don't recall I did the asking. It was a general conversation that Miss Volz might have to make some payments on it, and it is understood by the parties that in case she did have to make payments and there was a transfer of moneys she could put in a claim for any moneys that she might have paid in the event there was a transfer. Q. Was that said by you? A. I don't remember who said what, but Miss Volz asked a lot of questions. Naturally, she wanted to know all about it, and I tried to look into every angle and make it safe for everybody concerned. . . . Q. In your conversation with Miss Volz did you say to her that the purpose of putting her name on this joint tenancy deed was to protect her in the future should she be required to make some payments, and, in that event, would protect her on any payment that she might have made? A. I believe so. That was the whole gist of it."

Defendant testified that it was understood at all times that she was not to have any "present" interest in the property; "It was always my impression that she [plaintiff] was to have it and live in it, and at her death it would be mine. Q. But until her death you would have no interest in it? A. That is right."

■ Under the facts, it is clear that the sole purpose and intent of the defendant in signing the promissory note and trust deed was the loan of her name and credit to make the transaction acceptable to the sellers. She wanted to help put the deal over, not by paying any portion of the purchase price of the property, or any expenses incurred or to be incurred therewith, or by making the monthly payments on the note, all of which were to be paid by plaintiff, but by merely lending her name and credit to that of plaintiff. For this act alone she received no consideration whatsoever. Civil Code, section 1605, defines "consideration" as follows: "Any bene-

fit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor. . . ." No detriment was suffered by defendant. The note represented the balance due on the purchase price of the property. It was secured by a deed of trust on the property. In the event of a default in the payment of any installment due, the sole remedy of the holder would be to foreclose the deed of trust. No deficiency judgment could be rendered against defendant after a sale under the purchase money deed of trust. (Code Civ. Proc., §§ 580a, 580d; see *Stockton Sav. & Loan Bank* v. *Massanet*, 18 Cal.2d 200, 202, 206 [114 P.2d 592].)

As between the parties, the status of defendant on the note was that of an accommodation maker. An accommodation party is one who signs an instrument as maker, drawer, acceptor or indorser, without receiving value therefor and for the purpose of lending his name to some other person. (Civ. Code, § 3110.) ■ Parol evidence is admissible to show that the maker of a note is, in fact, an accommodation maker (*Seth* v. *Lew Hing,* 125 Cal.App. 729, 736 [14 P.2d 537, 15 P.2d 190]), and the evidence is limited to those cases in which there was no consideration passing, for otherwise the maker could not be an accommodation maker under the statute. ■ A loan of credit is the universal test of the character of accommodation paper. (*Gardiner* v. *Holcomb*, 82 Cal.App. 342, 353 [255 P. 523].) ■ The fact that an accommodation party has taken security for the loan of his credit does not prevent him from being an accommodation party, "for in order to constitute a valid consideration, the accommodation party must receive something else than the mere chance of not losing if he be called on to pay the instrument." (11 C.J.S. § 742, subd. c, p. 298.)

■ The only reason defendant's name was added on the joint tenancy deed with that of plaintiff was to secure her against any liability the parties thought she might incur by signing the promissory note and deed of trust. No "present" interest was given to defendant by the transfer. Plaintiff did not intend that she should have any interest in the property during her lifetime, other than by way of security, and defendant testified that she did not expect any. That this

was the understanding between the parties is also evidenced by their conduct. Plaintiff made the down payment on the property, paid all fees and expenses, made all payments due under the note, collected all rentals, and has retained sole and exclusive possession. Defendant has never contributed any payments on the property nor has she in anywise exercised or attempted to exercise any dominion over it.

It is likewise evident that all the parties misapprehended both the facts and the law. There was no necessity for placing defendant's name on the deed from the sellers, and it is clear that loan companies did not customarily require that such action be taken. Where the parties have misapprehended both the facts and the law, equity gives relief. (Civ. Code, §§ 1577, 1578; *Rued* v. *Cooper,* 119 Cal. 463 [51 P. 704]; *Hannah* v. *Steinman,* 159 Cal. 142 [112 P. 1094]; *Spear* v. *Farwell,* 5 Cal.App.2d 111 [42 P.2d 391].) In the last cited case, evidence was held properly admitted showing that a joint tenancy contract with respect to a bank account was entered into under a mistake of law. The court said (p. 113): "Our Civil Code defines a mistake of law as 'a misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law'. (Civ. Code, § 1578.) The evidence in this case shows a contract entered into by each of the parties under the same misapprehension as to the law. They were entitled to be relieved from the effects of such contract."

The court properly concluded that the defendant held record title to the property as a joint tenant with the plaintiff "in trust" for the plaintiff, for "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, § 2224.)

The correctness of the ruling of the court in not permitting defendant to amend her answer to set up the statute of frauds and a gift need not be noticed for in view of the foregoing the amendment was immaterial.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1949.