[Civ. No. 31772.   Second Dist., Div. Two.   July 29, 1968.]

SUPERIOR WHOLESALE ELECTRIC COMPANY, INC., Plaintiff and Respondent, v. JACK C. CAMERON, Defendant and Appellant.

Munger, Tolles, Hills & Rickershauser, Christian E. Markey, Jr., and William J. Bird for Defendant and Appellant.

Kahn, Stern & Blaney and Doyle O. Blaney for Plaintiff and Respondent.

NUTTER, J. pro tem.*—This is an appeal from a judgment on the guarantee in the sum of $7,000 for plaintiff-respondent by appellant-defendant Cameron.

*Assigned by the Chairman of the Judicial Council.

Plaintiff filed a complaint naming Jack C. Cameron, Herman Sneskin, Henry Davis and Jack C. Cameron, Inc.,[1] as defendants. The complaint alleged that on November 1, 1963, defendant Sneskin, doing business as Lee Electric Company, was indebted to plaintiff in the sum of $8,276.17 for goods sold and delivered by plaintiff; that defendants Cameron, Sneskin and Davis, "in consideration of forbearance of suit and in consideration of forbearance of the recordation of a mechanic's lien and foreclosure thereof against defendant Herman Sneskin, . . . signed and delivered to plaintiff *a written guaranty* for the sum of $7000.00, . . ."

The document in question is a letter dated November 1, 1963, signed by appellant Cameron, Sneskin and Davis, on appellant's stationery, addressed to the plaintiff, attention Bert Finmark (plaintiff's president) and reads as follows:

"Dear Bert:

"This letter is written to confirm our intention of financing or help in financing Lee Electric to clear its debts with your company to the extent of $7,000.00 of the $8,000.00 cash that is needed.

"With the full cooperation of Herman Sneskin and Mr. and Mrs. Henry Davis in this matter we see no reason why we will not be able to have said $7,000.00 by Friday, November 8, 1963.

"It is appreciated that your company is withholding any cause or cause of actions it may deem it has against any of the undersigned parties; consequently we shall proceed expeditiously to clear this matter.

"Lee Electric will want any necessary receipts or releases to adequately protect its interests either as against your company or as against any third parties who might have liability accruing because of its relationship with your company.

"Sincerely yours,
/s/ Jack C. Cameron
Jack C. Cameron
/s/ Herman Sneskin
Herman Sneskin
/s/ Henry Davis
Mr. Henry Davis"

---

[1]Jack Cameron Enterprises, Inc. was erroneously sued as Jack C. Cameron, Inc.

It was admitted in the joint pretrial statement that defendant Sneskin filed a voluntary petition in bankruptcy on December 5, 1963, and that plaintiff was listed as a creditor therein in the sum of $8,276.17.

The action as to defendant Sneskin was dismissed at pretrial. While judgment was against both Cameron and Davis, this appeal is by Cameron only.

Appellant is a general contractor. Defendant Sneskin was an independent electrical contractor doing business as Lee Electric Company and performed electrical work for appellant. Defendant Davis was at one time an employee of Sneskin and Sneskin's brother-in-law.

One of Sneskin's material suppliers was respondent-plaintiff Superior Wholesale Electric Company (hereinafter referred to as ''Superior''). In late 1963, Sneskin was having financial difficulties, and was in debt to Superior for approximately $15,000 for materials supplied for appellant's jobs and elsewhere. Sneskin asked Cameron for assistance. Subsequently, Cameron and Sneskin met with Finmark, president of Superior, who told Sneskin that Superior would be willing to accept a compromise of $7,000 in full payment of the moneys owed Superior by Sneskin.

Cameron agreed to give Superior a written guaranty and to loan Sneskin some money to help Sneskin pay his debt to Superior. Sneskin was to pay the proceeds of the loan over to Superior, obtain a release from Superior, and repay the loan from Cameron at the rate of $300 a month. As security for the loan, Mr. and Mrs. Davis were to give Cameron a second trust deed on their home. Subsequently, the letter of November 1 was executed and delivered.

The basic question presented is whether the letter of November 1, 1963, was a promise to guaranty payment of Sneskin's debt to plaintiff, or was merely a confirmation of a loan arrangement between Cameron and Sneskin.

Appellant also contends that Finmark's testimony that the parties intended a guarantee was erroneously admitted by the court over appellant's objection; the effect of Finmark's testimony was to add to the terms of an integrated written instrument, and the admission of that evidence therefore was in violation of the parol evidence rule. (Code Civ. Proc., § 1856.)

Appellant further contends that the performance of appellant's promise to loan money to Sneskin was conditional on

the "full cooperation of Sneskin and Davis" as stated in the November 1 letter; that Superior did not rely to its detriment on the letter of November 1, 1963, and if it did it was unjustified.

The trial court found that the subject letter was a written guarantee.

■ Section 2787 of the Civil Code provides that the distinction between sureties and guarantors is abolished; a surety or guarantor is one who promises to answer for the debt, default or miscarriage of another. ■ As we stated in *Verdugo Highlands Inc.* v. *Security Ins. Co.*, 240 Cal.App. 2d 527 at p. 531 [49 Cal.Rptr. 736]: "Under Civil Code, section 2837, a contract of suretyship is to be interpreted by the ordinary rules of contract construction. On this subject we think that the observations of the court in *Roberts* v. *Security Trust & Sav. Bank, supra,* at pp. 566-567 [196 Cal. 557 (238 P. 673)], are apt: " 'Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed with a view to effect the object for which it was given and to accomplish the purpose for which it was designed. . . .'' . . .' ''

■ It is abundantly clear that when findings of fact are attacked on appeal on the ground that there is no substantial evidence to substantiate said findings, the power of the appellate court begins and ends with the determination of whether or not there is substantial evidence, contradicted or uncontradicted, that will support the findings. (*Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848].)

■ There is substantial evidence to support the trial judge's determination that appellant intended and did promise to answer for Sneskin's debt. The guarantor was not subject to a condition precedent. The admission of the parol evidence was not error. (46 Cal.Jur.2d, § 27.)

The rules of construction applicable to other contracts are applicable to surety or guaranty contracts.

■ "If the intention of the parties cannot be ascertained with certainty from the instrument itself, resort may be had to the surrounding circumstances to determine its meaning. *First Nat. Bank* v. *Bowers,* 141 C 253, 74 P. 856; *Standard Oil Co.* v. *Houser,* 101 C A 2d 480, 225 P2d 539.'' (46 Cal. Jur.2d, p. 232.)

The dispute between the parties as to the meaning of the document could only be properly determined by a consideration of all the facts and circumstances surrounding its execution. This is a question of fact.

As the court stated in *First Nat. Bank* v. *Bowers supra,* at pages 261-262: ''Letters of guaranty are commercial instruments, generally drawn up by merchants, sometimes inartificial and often loose in their structure and form. They should not, therefore, be construed with nice and technical care; but, according to the facts and circumstances accompanying the transaction, holding in view as the main object to ascertain and effectuate the intentions of the parties . . . Facts which tend to illustrate or explain the language used in the contract, and to place the court or jury as nearly as may be in the situation of the parties as they contracted, are always admissible when the meaning of the terms used is debatable.''

Here it was necessary to ascertain the meaning of the letter from parol evidence and accordingly parol evidence was admissible to interpret it. (Witkin, Evidence (2d ed. 1966) p. 670.)

Appellant contends that no guaranty of Sneskin's debt was ever intended because the word ''guarantee'' was never used in the letter.

No particular form of agreement is required to establish a suretyship contract. So long as the agreement establishes the intention to create such a contract, no set words and form are required. (46 Cal.Jur.2d, Suretyship and Guaranty, § 23.)

The subject letter was prepared by appellant and signed by codefendants Henry Davis and Herman Sneskin.

Any uncertainty or ambiguity in a contract prepared by the guarantor will be most strongly interpreted and construed against him. (*Sather Banking Co.* v. *Briggs Co.,* 138 Cal. 724, 72 P. 352.) Of two permissible constructions, one that establishes a valid contract is preferred to one that does not (*Weinreich & Co.* v. *A. J. Johnston Co.,* 28 Cal.App. 144 [151 P. 667].)

It adequately appears that appellant and Davis fully intended to assume Sneskin's obligation of $7,000 to respondent. The letter stated that ''We see no reason why we will not be able to have said $7,000 by Friday, November 8, 1963.''

The letter then referred to the consideration of forbearance (the withholding of action by respondent) and finally referred to receipts or releases to be given. Cameron testified that he was going to see that Sneskin would personally pay respondent.

It appears that Sneskin probably intended to repay appellant; however, this was a matter between appellant and Sneskin, and of no concern to the respondent.

██ It is no defense that the original obligor, Sneskin, filed bankruptcy following the execution and delivery of the written guaranty. A surety remains fully liable when the obligation of the principal is discharged in bankruptcy. (*Bloom* v. *Bender*, 48 Cal.2d 793 [313 P.2d 568].)

Appellant's contention that respondent cannot recover because it allegedly did not rely to its detriment on the subject letter of November 1, 1963, is without merit. The testimony was otherwise.

Judgment affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 25, 1968.