[Civ. No. 8832.   Fourth Dist., Div. One.   Nov. 21, 1968.]

FRANK A. HYNUM, Plaintiff and Appellant, v. FIRST NATIONAL BANK OF SAN DIEGO, as Executor, etc.. Defendant and Respondent.

Condra, Baxley & Crouch, Classen Gramm and Robert C. Baxley for Plaintiff and Appellant.

Hervey & Mitchell and Thomas R. Mitchell for Defendant and Respondent.

BROWN (Gerald), P. J.—Frank A. Hynum appeals from a judgment declaring his rights and those of his deceased ex-wife's executor in a promissory note which he had executed in favor of his then wife as part of a divorce settlement.

The promissory note was in the face amount of $150,000. It provided for 2 percent interest per annum and payments of $1,050 or more per month to be increased to $1,350 or more monthly after six months. The unpaid balance of the note would become due and payable at the option of the wife should a payment be more than 30 days delinquent. The note was secured by a pledge of another note which was secured by a second deed of trust on real property. Provision was made for reasonable attorney's fees to the wife should action be required to enforce the note. The last paragraph of the note provided:

"This note is given as alimony and represents support payments due payee as set forth in that certain action for divorce between the parties hereto, being action No. 259229 in the Superior Court of the State of California in and for the County of San Diego."

Appellant contends the note is clear and unambiguous on its face, represents an agreement to pay alimony and as such his obligation to make payments on the note terminated when the payee, his ex-wife, died.

At the outset of the trial, appellant moved the court to exclude any extrinsic evidence "concerning the negotiations of the parties and all evidence as to what the parties really intended the words alimony and support to mean." When this motion was denied, appellant introduced a copy of the note in evidence and rested.

The respondent executor showed by evidence of the divorce negotiations, agreements, court orders and testimony of Mrs. Hynum's attorney the note was intended as a division of community property; the recital in the note it represented alimony and support was intended by the parties to prevent the obligation of the note from being discharged should the husband go through bankruptcy.

The court below found: ". . . the aforedescribed promis-

sory note was given to the Decedent in consideration of the Decedent's transfer to the Plaintiff of assets of like or greater value, and in settlement and division of community properties. . . . [T]o avoid the possibility of the discharge of said note in bankruptcy, and not otherwise, it was the agreement of the Plaintiff and the Decedent that for the purpose of the Bankruptcy Act, the unpaid balance of said note could be considered as alimony to avoid discharge.'' The court also found: ''The Plaintiff and the Decedent, MARY E. HYNUM, agreed both orally and in writing . . . the payments on the promissory note would continue until the principal sum was paid in full, without regard to the death or remarriage of either party.''

The findings of the court are supported by substantial evidence in the record. Apparently recognizing this, appellant does not contend otherwise. ■ Appellant's contention is, as it was at the trial, the evidence supporting the above findings should have been excluded by the parol evidence rule.

Appellant's claim the note is clear and unambiguous on its face and evidence to explain its meaning and intendment thus inadmissible rests upon a construction and application of the parol evidence rule which does not pertain in this state. In *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641], the court states: ''The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.''

Noting the imprecision and instability of our English language the Supreme Court expresses the rule thus (69 Cal.2d at pp. 39-40: ''Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. That possibility is not limited to contracts whose terms have acquired a particular meaning by trade usage, but exists whenever the parties' understanding of the words used may have differed from the judge's understanding.

"Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the "court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for. . . .', extrinsic evidence relevant to prove either of such meanings is admissible.'' (Citations and footnotes omitted.)

In the present case, even if the rule contended for by appellant were applicable, uncertainty and ambiguity regarding enforceability of the note after death of the payee appears on the face of the note. Appellant would construe the note as a pure alimony and support agreement. It is somewhat unusual to express such an agreement in the form of a promissory note. Ordinarily, the parties to a promissory note intend it to be enforceable by the payee's representatives after the death of the payee. The note provided a number of things not ordinarily incident to a pure alimony and support agreement such as interest, acceleration on default, attorney fees and security.

The note itself, in referring to the divorce action, invites an examination of the divorce proceedings to determine the intention of the parties in utilizing a promissory note given as alimony and representing support payments "as set forth in that certain action for divorce.'' The interlocutory decree of divorce states the property of the parties "shall be distributed to the parties in due course by further agreement, each of the parties to receive one-half ($\frac{1}{2}$) of the net equities of the properties based upon their present value.'' Approximately three months later a "Judgment re Distribution of Properties, Custody, Alimony and Child Support'' which provided for alimony of one dollar ($1) per year and "Said alimony shall continue even though plaintiff [wife] remarries if and in the event that the ONE HUNDRED FIFTY THOUSAND DOLLAR ($150,000) promissory note described hereafter is discharged in bankruptcy or is unpaid for any reason whatever.'' The Judgment re Distribution of Properties, Custody, Alimony and Child Support required the making of the note setting forth its essential terms including: "said note shall also provide that the entire unpaid balance shall be considered

alimony *in the event* defendant is adjudicated bankrupt.'' (Italics ours.)

Testimony of the wife's divorce attorney indicated there was difficulty in appraising appellant's complex business affairs and property holdings. A conservative estimate placed his net worth at $300,000 and it was agreed the wife would receive one-half of that figure. Considerable concern arose over the possibility appellant would declare bankruptcy. Because his holdings were heavily encumbered it was impracticable to divide the property in kind. Appellant's going businesses were operated subject to franchises personal to him which were revocable by the granting authority. For these reasons it was agreed the wife would receive the value of her share of the properties by means of a promissory note. To avoid the possibility of discharge in bankruptcy the parties agreed the note would be considered alimony and support in any bankruptcy proceedings. A property settlement agreement between the parties provided the support payments represented by the note ''shall continue until wife has received the total amounts provided for.'' The appellant waived his rights under Civil Code, section 139.

Appellant produced no witnesses to refute the above evidence; did not appear at the trial and remained out of this state.

The trial court correctly allowed evidence to show the circumstances surrounding the making of the note. Evidence of the object, nature and subject matter of the note showed it was reasonably susceptible of the interpretation given it by the court. The description of the proceeds of the note as alimony and support was not intended to allow discharge on the death of the payee but for the limited purpose of preventing discharge in the event of bankruptcy. Whether the language would be effective to accomplish non-dischargeability in bankruptcy is not a question before this court. Recognizing the language might not be effective for that purpose, the parties agreed the divorce court would have continuing jurisdiction to award alimony should the note be discharged in bankruptcy or otherwise be unpaid.

On the third and last day of trial appellant asked the court for a 30-day continuance so he could change attorneys. The motion was denied. Appellant claims this was reversible error as denying him an attorney of his choice. The attorney who tried the case was the one who, under the supervision of his senior partner, had drafted the pleadings, conducted dis-

covery and prepared the case for trial. The question was not whether appellant would be allowed an attorney of his choice; he had chosen his attorneys. The question was whether, having lost his primary point concerning the parol evidence rule, he should be allowed to disrupt the trial on its last day to choose another attorney.

Appellant's trial attorney was ready and able to conclude the trial. Appellant's personal attorney from Texas was present at the trial. The trial attorney was competent, capably presented his client's case and capably resisted the case of his opponent. The action was one instituted by appellant so he had primary control over the timing of proceedings.

The trial court acted well within its discretion in denying the motion for continuance. (*Thorpe* v. *Thorpe,* 75 Cal.App.2d 605, 609 [171 P.2d 126].)

The judgment is affirmed.

Coughlin, J., and Whelan, J., concurred.