[Civ. No. 42884. First Dist., Div. One. May 30, 1979.]

CAROL NICKERMAN, Plaintiff and Respondent, v.
LESLIE E. RYAN, Defendant and Appellant.

566

## COUNSEL

Misuraca & Beyers and Christopher G. Costin for Defendant and Appellant.

Richard C. Burton for Plaintiff and Respondent.

## OPINION

**SIMS, J.**\*—Defendant, ex-husband, has appealed from a judgment granting his ex-wife a deficiency judgment on a secured note given pursuant to an agreement, under which they divided real property awarded to them as tenants in common in the decree dissolving their marriage. The trial court found that the note and the deed of trust, on one of the parcels formerly held as tenants in common, was not given to secure the balance of the purchase price of that parcel, but rather to equalize the division of all of the property so held. Defendant contends that the evidence requires a finding that the note and deed of trust were in fact given to the ex-wife as vendor to secure the payment of the balance of the purchase price of her interest in that parcel, and, as such, any deficiency judgment, following the sale of the property under a prior lien, was barred under the provisions of section 580b of the Code of Civil Procedure.[1] (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 196-198 [259 P.2d 425] [cert. den. 347 U.S. 905 (98 L.Ed. 1064, 74 S.Ct. 430)].) In addition, he asserts that the trial court erred in concluding that the secured note, if given to equalize the division of property after the decree of divorce, was not given to secure the balance of the purchase price of the whole of the

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] So far as is pertinent here, section 580b provides: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, . . ."

property acquired by the maker of the note, so that a deficiency judgment would be barred if it were secured by any portion of the property received by the payee.

■■ ■■ We conclude that under general principles of construction the trial court properly found that the note and deed of trust were given to equalize a division of former community property between ex-spouses holding the property as tenants in common. We further determine that the transaction, as so interpreted, is such a variation on the standard purchase money mortgage or deed of trust transaction that it would not subserve the purposes of section 580b, as explicated by the courts, to deny a deficiency judgment in this case. (See *Spangler* v. *Memel* (1972) 7 Cal.3d 603, 611 [102 Cal.Rptr. 807, 498 P.2d 1055].) The judgment must be affirmed.

At the trial the plaintiff produced and introduced in evidence copies of the interlocutory judgment of divorce entered July 28, 1967, which provided, so far as is relevant here, as follows: "The following community property shall go one-half to wife and one-half to husband, to wit;

"1. Eunice Court

"2. City Center Motel

"3. Home

"4. Lot 15 Deerwood Subdivision

"5. Lot in Caspar, California

"6. Judgment—DeTurk and Finali

"7. ¼ interest in 40 acres adjacent to Deerwood Park.

"IT IS FURTHER ORDERED AND ADJUDGED that both parties take said property subject to liens of record."

She also introduced in evidence an agreement dated September 22, 1967. The agreement recites that the judgment was entered as aforesaid and continues as set forth in the margin.[2]

---

[2]"WHEREAS, items 4 and 7 above have presently been disposed of and item 6 above is in the process of being paid, and
"WHEREAS, Leslie desires to buy Carol's interest in the remaining properties, and
"WHEREAS, Carol desires to sell to Leslie said properties;
"NOW, THEREFORE, the parties agree as follows:
"1. The purchase price shall be TWENTY FIVE THOUSAND and 00/100ths DOLLARS ($25,000.00) payable from Leslie to Carol in the following manner and under

The plaintiff also introduced in evidence the note and deed of trust executed and delivered pursuant to the agreement of September 22, 1967.

The defendant produced a copy of a trustee's deed which showed that the property the subject of plaintiff's deed of trust had been sold under a prior deed of trust on June 27, 1969. He also introduced copies of briefs filed in the divorce proceedings which reflected the parties' original demands in connection with the disposition of their community property, and copies of papers filed in March 1968 in connection with a motion for modification of a support order.

The plaintiff testified that, following the divorce, problems arose in connection with the management of the income producing properties

the following terms and conditions: Concurrently herewith, Leslie shall execute and deliver to Carol, a note in the said amount of $25,000.00, which shall bear interest at the rate of 7% per annum compounded annually, and shall be due and payable as follows, to wit; One half on or before five years from date, and one half on or before five years thereafter. Provided further that said note shall be secured by a second Deed of Trust on the City Center Motel property, and should such property securing said note be sold at any time hereafter, then the whole of said note shall be immediately due and payable at the option of the beneficiary. A copy of said proposed note and the manner and form thereof, is attached hereto, marked Exhibit 'A,' and by reference made a part hereof.

"2. As further consideration on the part of Leslie, he agrees to transfer all his right, title, and interest in the home located at Deerwood Park, and now being occupied by Carol and the children of the parties, and the same shall become her own sole and separate property.

"3. As and for further consideration, Leslie agrees to transfer, or procure the transfer, of the lot and cabin in Caspar, California, to Carol, or to such transferee or transferees that Carol may designate. Carol agrees to assume all obligation in connection with the properties transferred to her pursuant to this agreement.

"4. In consideration thereof, Carol agrees to transfer unto Leslie all her right, title, and interest in and to the said Eunice Court and City Center Motel.

"5. Each party agrees concurrently herewith, to execute all documents necessary to effectuate these mutual transfers.

"6. It is further agreed that Leslie shall arrange financing, as soon as feasible, to release Carol from any obligation for the properties transferred by her to Leslie, and in any event, to hold her harmless from any financial responsibility arising therefrom.

"7. It is further provided, as and for further consideration on the part of Leslie for the transfers hereinabove set forth to be made from Carol to Leslie, to hold Carol harmless for all bills incurred to-date in relation to said properties and to hold her harmless for all bills incurred by the parties to the date of the Interlocutory Judgment of Divorce. This paragraph shall not apply to the encumbrance on the Mustang automobile, which was transferred to Carol by the Court in said Interlocutory Judgment of Divorce.

"It is the intent of this agreement that each party will hold as his or her own separate property, the properties above set forth, and each party agrees not to interfere with the property or the management thereof, of any properties transferred to the other party.

"By this agreement Carol does not waive any monies now or hereafter to become due for child support and maintenance for herself, pursuant to the said Interlocutory Judgment of Divorce, nor her interest in the DeTurk-Finali judgment. [Text corrected to read:] ½ of Finali judgment to Carol F. Ryan to be used for personal bills. ½ to Leslie E. Ryan for Mendo Lake payments."

—Eunice Court and City Center Motel. At the time there was ill will between plaintiff and defendant and she did not discuss the matter directly with him. She authorized her father to negotiate with the defendant for a division of the properties. She did not want a liquidation because she needed the home, and she wanted her husband to have some means of making the alimony and child support payments that she had been awarded. Although originally she had requested her father to make some arrangement for the collection of rentals, that proposal did not work out, and then he negotiated for a note to represent the differential in the values of the property to be assigned to each. She had been in the position of having to beg for funds and wanted a total settlement of the properties so each could conduct a life free of the problems of joint ownership. She knew that both the City Center Motel and each of the five units of Eunice Court had some equity value, but she never considered that she was agreeing solely and only to the sale of the City Center Motel. The agreement set forth above, drawn by her attorney, was the result, and she received the note and deed of trust. She realized that there was to be no payment before five years, but believed she could get along on the support payments. No payments were ever made on the note. (Suit was not filed until September 21, 1976, the day before the expiration of the statute of limitations on the first payment due on the note.)

The plaintiff acknowledged that she heard that the property securing the note was being sold under the prior deed of trust but she was in no economic position to relieve the default at that time.[3]

The defendant agreed that at the time, he and the plaintiff were basically unable to settle the problems involving joint ownership of the properties. He testified that the plaintiff was represented by her father and that they were trying to secure money from the gross income of the motel and the apartments, and he was trying to make the payments. According to the defendant, after negotiations with plaintiff's father, it was agreed that plaintiff would be awarded the home and the cabin on the coast, and he would assume their liabilities in return for his receiving the equity in the Eunice Court apartments. The only problem was in determining what equity there was in the City Center Motel so that the

---

[3]Plaintiff volunteered that the defendant's father took over the property after the foreclosure. Over defendant's objection, testimony was adduced to show that some time after the foreclosure, defendant's father did acquire the motel, and on his death defendant inherited the proceeds of its sale in his father's estate. Since there was nothing to show any collusion, the trial court properly did, and we do, disregard that testimony.

plaintiff could be awarded compensation for her one-half interest. After a week's negotiation, he agreed to give plaintiff a $25,000 note and a deed of trust on the motel, in addition to what is set forth above. Defendant testified that although there was a $28,000 aggregate equity in the five units in Eunice Court, plaintiff's father never requested a lien on that property.

He further testified that later on one occasion the plaintiff's court proceedings to enforce support payments caused a seizure of funds with which he expected to relieve a default in payment of taxes on the motel. At the time the motel was foreclosed by sale, he offered plaintiff, through her then attorney, assistance in retaining the motel if she could relieve the defaults. On cross-examination the defendant acknowledged that some written notes, which appear to be additions of several values, were made by him at or about the time of the negotiations or before.

I

If we examine solely the agreement itself it is clear that we must reject the defendant's contention that there was a simple sale of the plaintiff's one-half interest in the motel for a $25,000 purchase price, secured by the one-half interest conveyed and the one-half interest which had vested in the defendant through the divorce decree. "The interpretation of a written instrument, even though it involves what might properly be called questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202-204), is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635-1661; Code Civ. Proc., §§ 1856-1866.) . . . It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]. See *State of California* v. *San Luis Obispo Sportsman's Assn.* (1978) 22 Cal.3d 440, 451 [149 Cal.Rptr. 482, 584 P.2d 1088].)

The agreement sets forth a nonseverable exchange of plaintiff's interest in the apartments and the motel in return for $25,000, the defendant's interest in the home and the cabin and the defendant's assumption of the

payment of the debts incurred during marriage. As noted by defendant, the agreement does refer in its recitals to the defendant's desire "to buy" the plaintiff's interest, and her desire "to sell." Nevertheless by its four corners it supports the finding of the court reading: "The note and deed of trust were not given to plaintiff to secure payment of the balance of the purchase price for the City Center Motel, but rather to equalize a division of community property after a decree of divorce." Our independent judgment leads to the same conclusion.

The court, however, properly admitted evidence under principles recognized in *Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d at page 865, and developed and applied in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]. There the court concluded: "Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.] If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." (69 Cal.2d at pp. 39-40, fns. omitted.)

The test here, therefore, is whether the trial court's finding and interpretation of the agreement is supported by substantial evidence. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d 861, 865; *Hynum* v. *First Nat. Bank of San Diego* (1968) 267 Cal.App.2d 540, 541-544 [73 Cal.Rptr. 507].) In order to upset the finding of the trial court we would have to rule that the trial court was bound to follow the defendant's version of the agreement as a matter of law. This we are not prepared to do. It is true that the plaintiff at no time participated in the negotiations, and that, in the absence of any testimony from her father, the defendant's testimony concerning the manner in which the negotiators arrived at an agreement stands uncontradicted. Nevertheless the agreement itself is the final expression of the intention of the parties. We cannot say as a matter of law that the plaintiff would have executed an agreement embodying the home and cabin on the one hand, and debts and apartments on the other, leaving the motel for further negotiation.

Defendant's attack on the court's finding is rejected.

II

In examining the applicability of the provisions of section 580b on the agreement, *as so construed, we start with Brown* v. *Jensen, supra.* There the court distinguished between the restraints of section 726, which permitted an action on the note when the security was rendered valueless because sold out under a prior lien, and section 580b. With respect to section 580b the court ruled: "With purchase money trust deeds, however, the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless." (41 Cal.2d at p. 197.) The court further observed: "The one taking such a [purchase money] trust deed knows the value of his security and assumes the risk that it may become inadequate. Especially does he know the risk where he takes, as was done here, a second trust deed." (*Ibid.*)

In *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97], the court reexamined the policies on which section 580b was predicated. It held that the provisions of that section did not preclude recovery on a secured note given for the purchase price of real property when the security, which had been lost by sale under a prior encumbrance, was on collateral real property not the subject of the sale. (59 Cal.2d at pp. 41-43. See also *Scott* v. *Fidelity Dev. Co.* (1974) 39 Cal.App.3d 131, 135 [113 Cal.Rptr. 855].) The court observed: "Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to section 580b only if they come within the purpose of that section." (*Id.,* p. 41. Accord, *Spangler* v. *Memel, supra,* 7 Cal.3d 603, 611.)

The purpose of the section, to serve as a touchstone for evaluating variations on the ordinary purchase and sale of real property, was expostulated as follows: "Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citations.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a

general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (*Id.*, p. 42. See also *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 601 [125 Cal.Rptr. 557, 542 P.2d 981]; *Spangler* v. *Memel, supra,* 7 Cal.3d 603, 612; and *Bargioni* v. *Hill* (1963) 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593].)

It is clear that insofar as the security of the note consisted of the defendant's half interest as tenant in common of the City Center Motel it was not a purchase money mortgage. In this case, however, the purchaser, unlike Chierighino, did lose, along with his own half, the one-half interest in the motel which he had purchased. On the other hand, as in *Roseleaf,* to deny the plaintiff recovery would mean that the defendant would have acquired not only the one-half interest in the motel, but also a one-half interest in the apartments which he presumably still enjoys, at less than the agreed price. Furthermore, if there is any merit in the theory that "the vendor knows the value of his security and assumes the risk of its inadequacy," that theory does not apply here, anymore than it did in *Roseleaf.* There is no reason to believe that the plaintiff wife (or her father) had any greater knowledge of the value of the motel which they held as tenants in common than did the defendant husband. (See *id.,* p. 43.)

We note, however, that *Roseleaf Corp.* v. *Chierighino, supra,* did not indicate, as some commentators had suggested, a general abandonment of the principle established in *Brown* v. *Jensen.* In *Barash* v. *Wood* (1969) 3 Cal.App.3d 248 [83 Cal.Rptr. 153], the court considered that commentary, and concluded that *Brown* v. *Jensen* still controlled the ordinary purchase and sale transaction when the vendor took a second deed of trust which became valueless because of foreclosure of a prior lien.[4] (3 Cal.App.3d at pp. 250-252.) Similarly, in *Spangler* v. *Memel, supra,* the

[4]For comment and discussion on policy and practice under the provisions of section 580b, see the following: Leipziger, *Deficiency Judgments in California: The Supreme Court Tries Again* (1975) 22 UCLA L.Rev. 753, 758-778, particularly pages 775 and 778 (discussed below); Hetland, California Real Estate Secured Transactions (Cont.Ed.Bar 1970) sections 6.21-6.45, pages 256-308; Hetland, Secured Real Estate Transactions (Cont.Ed.Bar 1974) sections 9.19-9.20, pages 204-205 and section 9.24, pages 210-215; 1 Miller & Starr, California Real Estate (1975) sections 3:147-3:161, pages 584-607; 5 Augustine & Zarrow, California Real Estate Law and Practice (1978) sections 122.30-122.43, pages 122-26-40.1; 2 Bowman, Ogden's Revised California Real Property Law (Cont.Ed.Bar 1975) sections 18.8-18.9, pages 945-946; and 3 Witkin, Summary of California Law (8th ed. 1973) Security Transactions in Real Property, sections 117-127, pages 1585-1597.

court pointed out with respect to *Brown* v. *Jensen, supra*: "We have never overruled or modified this central ruling that section 580b applies to a sold-out junior lienor holding such security for the payment of the balance of the purchase price. Indeed, as will become clear in the following discussion, all subsequent decisions by this court on the applicability of section 580b have assumed that this section by its terms applies to sold-out junior lienors and have gone on to determine whether the particular purchase money situation in question fell within the purposes of section 580b." (7 Cal.3d at pp. 609-610. See also *Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 407-408 [126 Cal.Rptr. 549]; *Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 441-443 [112 Cal.Rptr. 370].)

In *Deficiency Judgments in California: The Supreme Court Tries Again* (1975) UCLA L.Rev. 753, Acting Professor Leipziger urges that since the subordinating seller was protected in *Spangler* v. *Memel,* the same principle should apply to any vendor of commercial property, whether the senior encumbrance secured a construction loan or not, and that the provisions of section 580b applicable to a vendor should be confined to the sale of residential property, as the provisions applying to a third-party lender of the purchase price have been since the 1963 amendment of section 580b. (Cf. *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263-264 [78 Cal.Rptr. 170, 455 P.2d 106], with *Bargioni* v. *Hill, supra,* 59 Cal.2d 121, 123. See 22 UCLA L.Rev. at pages 771-778.) We, however, cannot lightly disregard the mandate of *Spangler* v. *Memel,* and must continue our analysis to determine whether the transaction in this case fell within the purposes of section 580b.

An exchange of properties may result in a situation giving rise to the application of section 580b. (See *Christopherson* v. *Allen* (1961) 190 Cal.App.2d 848 [12 Cal.Rptr. 658].) There the court did, however, uphold the recovery on additional unsecured notes after there had been a partial recovery of the purchase price on secured notes by foreclosure. The transaction here was not, however, an ordinary exchange with a balance to be paid in cash. The parties here as tenants in common wanted to vest in the defendant the management and control of the commercial properties. The plaintiff wanted to be free of that burden. It would be ironic to hold that the plaintiff who entered into the transaction to be free of the vicissitudes of the commercial enterprises, and so surrendered her joint right of control, should find that her fair share of the joint property was lost because of the sole management of the defendant who assumed the risks of the motel and apartment business. She is deserving of the

same consideration given the vendor in *Spangler* v. *Memel.* There the court recognized that the subordination agreement evidenced that there was to be a new and changed use of the property for which a valuation would be speculative. (7 Cal.3d at p. 611.) There was no such changed use here, except insofar as the defendant was to be freed from the plaintiff's demands on the income of the motel and her interference in the management. Nevertheless, the following language in *Spangler* is pertinent: "If in such situation section 580b is applied to prevent the vendor from suing on his promissory note, after the development has failed and the senior lienor has caused the property to be sold, the risk of the failure of the commercial development is thrust upon the vendor. In fact, however, the success of the commercial development depends upon the competence, diligence and good faith of the developing purchaser. It would seem proper, therefore, that the purchaser not the vendor bear the risk of failure, particularly since in the event of default, the junior lienor vendor will lose both the land and the purchase price." (7 Cal.3d at p. 613.)

In *Spangler* the court also stated: "The second purpose delineated in *Roseleaf,* namely to prevent aggravation of a depression in land values by not burdening purchasers with loss of the property plus personal liability, has little applicability to a sold-out junior lienor in the subordination clause context. If section 580b is applied to prevent the deficiency judgment, then the subordinating sold-out junior lienor loses both the land and the purchase price. If section 580b is not applied then the purchaser is subjected to the same burden. Neither party has the land in this context; the sole question is who shall bear the cost of the unpaid portion of the purchase price." (7 Cal.3d at p. 614.) Here also it would be unfair to place the risk of the business venture, from which she was withdrawing, upon the plaintiff.

The defendant finds support for the application of the deficiency statute in *Gates* v. *Schuster* (1964) 227 Cal.App.2d 287 [38 Cal.Rptr. 644]. There as in this case there was a transfer of more than the single parcel of land which was given as security for the purchase price. The vendor contended that section 580b was not applicable because the transaction involved both real and personal property. The court observed: "The contract provided solely for a note secured by a trust deed on certain real property. The real property was a portion of what was bought and sold by the parties for one indivisible price. There was no provision for security covering the items of personal property. Considering defendants' default, the plaintiffs have achieved in this action precisely that for which they

contracted." (227 Cal.App.2d at p. 288.) It concluded: "In the instant case the plaintiffs contracted to forego security on all but the real property sold. [Citations.]" (*Ibid.*)

In that case, unlike this case, there was no attempt to settle the affairs of persons holding property in some form of joint ownership. We find that *Comstock* v. *Fiorella* (1968) 260 Cal.App.2d 262 [67 Cal.Rptr. 104], points the way to the disposition of this case. There a note was given in satisfaction of the difference resulting when partnership property was distributed on dissolution. One partner took all of the property and gave a note, secured by deed of trust on the real property, to the other for the agreed value of his one-half interest. The court found that the transaction did not create a "purchase money security." The decision noted that on dissolution the partners were entitled to an accounting and final settlement by action or by agreement. So here the parties were entitled to an action of partition, or they could agree, as they did, on their respective rights. The *Comstock* court continued: "The agreement, however, retains the character and legal effect of an accounting and distribution and does not constitute a sale and purchase of the partnership's real property. The interest of a partner in the firm assets is the share to which he is entitled after claims against the firm and accounts between the partners are settled; it is an equitable interest enforceable by an action for an accounting, [citations]." (260 Cal.App.2d at p. 265.) So here there was a settlement of the parties' joint affairs in the ownership and management of the apartments and motel, and their remaining property and debts.

In Miller & Starr, Current Law of Real Estate (1975) the authors comment on *Comstock* v. *Fiorella, supra,* as follows: "The decision is curious since it would appear that upon the partnership dissolution each was entitled to his respective interest in the property as tenants in common and, in effect, the plaintiff 'sold' his prospective tenancy in common interest to the defendant in consideration for the note. As a matter of equity, therefore, each partner is looking only to the former partnership asset, and it would be inequitable to make one partner liable for the recovery of the other partner's partnership interest." (*Id.,* § 3.148, fn. 4, p. 588.) In our opinion the comment overlooks the fact that the purchasing partner is to enjoy the use of the asset and business, a risk which the selling partner apparently sought to shed by the agreement to dissolve. As we have noted above, this is the very type of situation which *Spangler* v. *Memel* states should not be included within section 580b. If the transferee does not wish to take the business risks at the price bargained for, he should have insisted on legal partition or dissolution.

Section 4800 of the Civil Code in subdivision (a) contemplates an equal division of the property in kind. (See *In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039, 1047-1048 [118 Cal.Rptr. 232].) It is only "[w]here economic circumstances warrant" that "the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." (Civ. Code, § 4800, subd. (b)(1).) Defendant notes that there has been a certain reticence about using or approving the latter provision with a cash differential as a condition. (See *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 597-598 [141 Cal.Rptr. 597]; *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 930-931 [134 Cal.Rptr. 161]; and *In re Marriage of Juick* (1971) 21 Cal.App.3d 421, 428-430 [98 Cal.Rptr. 324].) What the court may do in the dissolution proceedings is not before the court in this action. Neither party sought to upset the distribution as tenants in common in the interlocutory decree. They did, however, undertake a partition by agreement. In the *Hopkins* dissolution, *supra,* the court noted: "It must, however, be recognized that what happens in such a case is that one spouse gets the lion's share of the community property, for which he or she must pay with assets to be acquired in the future. [Citing *In re Marriage of Juick, supra.*]" (74 Cal.App.3d at p. 598.) It would appear unreasonable to permit the spouse who got the lion's share to escape the obligation to pay for the excess with the assets he acquires in the future.

Defendant relies on the principle that transfers between spouses or ex-spouses by agreement may give rise to taxable gain which is recognized for income tax purposes. (See *United States* v. *Davis* (1962) 370 U.S. 65 [8 L.Ed.2d 335, 82 S.Ct. 1190]; and *Jean C. Carrieres* (1975) 64 T.C. 959.) That consequence cannot throw any light on the question of whether or not the transaction is or is not such a variation on the standard purchase money deed of trust as to not serve the purposes of section 580b as explicated by the courts.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied June 29, 1979, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1979. Mosk, J., was of the opinion that the petition should be granted.