[Civ. No. 31382. Fourth Dist., Div. One. Aug. 23, 1984.]

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION
OF PHOENIX, Plaintiff and Appellant, v.
KENNETH A. LEHMAN et al., Defendants and Respondents.

COUNSEL

Glenn, Wright, Jacobs & Schell, Kent H. Foster, Aaron M. Peck, Michael D. Berk and McKenna, Conner & Cuneo for Plaintiff and Appellant.

Duke, Gerstel, Shearer & Bregante and Richard D. Bregante for Defendants and Respondents.

OPINION

**WIENER, J.**—First Federal Savings and Loan Association of Phoenix (First Federal) appeals from the order of dismissal entered after the court sustained without leave to amend the demurrer to its complaint brought by defendants Kenneth A. Lehman, Carolyn Lehman and Peter F. Chkoski (collectively, the Lehmans). We conclude the court complaint seeks a deficiency judgment against the Lehmans following First Federal's nonjudicial foreclosure on real property security under a deed of trust. First Federal's right to obtain such a judgment under these circumstances is barred by Code of Civil Procedure section 580d.[1] Accordingly, we affirm the order of dismissal.

*Factual and Procedural Background*

Assuming the truth of First Federal's factual allegations (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 816]), the following chronology emerges.

In September 1979 the Lehmans applied to First Federal for a $150,000 loan to purchase a single family residence in San Diego for the price of $212,000. The Lehmans represented to First Federal that the $62,000 difference between the loan amount and the purchase price would be paid by their $37,000 down payment plus secondary financing which would not exceed $25,000. The Lehmans also represented the residence would be owner-occupied. First Federal relied on the Lehmans' representations in making the loan, which was secured by a first deed of trust on the residence.

On February 19, 1980, shortly after the close of escrow, the sellers returned the Lehmans' down payment to them and accepted a $40,000 promissory note secured by a third deed of trust on the residence. Although faithful in their payments on First Federal's loan, the Lehmans treated the residence as an investment property and never lived in it themselves.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

In December 1980 the Lehmans sold the residence. It is unclear from the complaint whether the new buyers assumed the Lehmans' loan from First Federal or obtained separate financing. In either event, payments continued to be made on First Federal's loan.

In December 1981 First Federal initiated nonjudicial foreclosure proceedings under its first deed of trust following the default of its loan. First Federal bought the residence at a public auction on July 15, 1982. The complaint does not state the amount of First Federal's successful bid. Presumably, however, that amount was less than the balance due under the Lehmans' promissory note. In August 1982 First Federal prosecuted an unlawful detainer action to obtain possession of the residence. Upon obtaining possession First Federal discovered numerous design and construction defects.

In February 1983 First Federal brought this action for damages for fraud, negligence, strict liability and breach of warranty. Along with the Lehmans, defendants include the original sellers, second buyers, architects and builders of the residence. In the first of seven causes of action First Federal alleges the Lehmans fraudulently induced it to loan them $150,000 for their purchase of the residence.[2] As damages for fraud First Federal seeks unspecified sums for its loss of use of the principal amount of $150,000 and for the possible loss of some or all of that principal amount. First Federal also seeks fraud damages for its costs, including attorney fees, for foreclosing on the residence, obtaining possession and clearing title and for anticipated costs of repair and resale. First Federal finally seeks $500,000 punitive damages.

The Lehmans demurred on the ground sections 580b, 580d and 726 barred First Federal from any recovery against them following its nonjudicial foreclosure on the residence. The lower court agreed, ruling "[t]he first cause of action amounts to an attempt to collect upon the secured debt and is an attempt to circumvent the anti-deficiency legislation of this State."

*Discussion*

A beneficiary under a deed of trust can foreclose on real property security judicially by suing for a judgment of foreclosure (§§ 725a, 726) or nonju-

---

[2]The Lehmans are also named as defendants in the third and possibly the second causes of action. The court sustained the Lehmans' demurrer as to all three causes of action. First Federal stipulated below that the court's order sustaining the Lehmans' demurrer as to its first cause of action would apply equally to its second cause of action. In its briefs on appeal First Federal neither withdraws that stipulation nor challenges the court's order of dismissal as to its third cause of action. Therefore, we summarily affirm the court's order as to the second and third causes of action. (See *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 858-859, fn. 1 [176 Cal.Rptr. 239]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

dicially by exercising a power of sale. (Civ. Code, §§ 2924, 2932.) Nonjudicial foreclosure allows for the expeditious recovery of amounts due from a debtor/trustor. However, if the security is insufficient, the beneficiary's right to a deficiency judgment against the debtor/trustor following nonjudicial foreclosure may be barred either by section 580b or 580d, or by both. (See *Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733 [111 Cal.Rptr. 897, 518 P.2d 329].)

Section 580b provides in part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, *or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.*" (Italics supplied.)

First Federal argues it is not barred by section 580b because the Lehmans never occupied the residence. (See *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263-264 [78 Cal.Rptr. 170, 455 P.2d 106]; *Allstate Savings & Loan Assn.* v. *Murphy* (1979) 98 Cal.App.3d 761, 763-764 [159 Cal.Rptr. 663].) ■■ We need not address that issue in light of our conclusion section 580d bars First Federal's fraud cause of action against the Lehmans.

Section 580d provides in part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust."

This section bars any deficiency judgment[3] for amounts due under a promissory note when, as occurred here, the trust deed beneficiary elects to

---

[3]A deficiency judgment awards recovery of the unpaid principal and interest on the secured debt (see *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 198 [259 P.2d 425]; *Kish* v. *Bay Counties Title Guaranty Co.* (1967) 254 Cal.App.2d 725, 733 [62 Cal.Rptr. 494]) plus the costs, fees and other expenses of foreclosure. (See *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 606, fn. 10 [125 Cal.Rptr. 557, 542 P.2d 981]; see also § 726, subd. (b); 1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 3:145, p. 582.) Section 580d therefore bars First Federal from recovering fraud damages for the loss of use and unpaid balance of its loan funds and for costs incurred in foreclosing on and clearing title to the residence. As for the other damages First Federal seeks, those sums also are unrecoverable under its fraud cause of action. Costs incurred in connection with First Federal's unlawful detainer action were recoverable, if at all, in that action. (§ 1174, subd. (b).) Repair costs resulting from design and construction defects in the residence will be recoverable, if at all, from the architects and builders under First Federal's causes of action for negligence, strict liability and breach of warranty. Resale costs presumably will be factored into the price for which the residence is resold. Finally, punitive damages cannot be recovered absent an award of actual damages for fraud. (Civ. Code, § 3294, subd. (a).)

foreclose by exercising its power of sale. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 602.)

To avoid the bar of section 580d, First Federal asserts it is seeking damages for fraud rather than a deficiency judgment on the Lehmans' promissory note. First Federal relies on broad language appearing in several cases to support its distinction between actions to recover fraud damages and to obtain deficiency judgments. For example, in *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101 [135 Cal.Rptr. 802] the court categorically states: "The defense of sections 580b and 580d proscribing deficiency judgments is not available to the trustor as a defense to an action by the beneficiary for fraud. [Citations.] The statutes only proscribe deficiency judgments; an action for damages for fraud is not one for a deficiency judgment." (*Id.,* at p. 139.) Factual analysis reveals *Glendale Federal* and each of the cases it cites involved alleged misrepresentations regarding or adversely affecting the value of the real property security. (*Id.,* at pp. 133-135; *Kass* v. *Weber* (1968) 261 Cal.App.2d 417, 418-419 [67 Cal.Rptr. 876]; *Baumrucker* v. *American Mortgage Exchange, Inc.* (1967) 250 Cal.App.2d 451, 452-455 [58 Cal.Rptr. 677]; *Joanaco Projects, Inc.* v. *Nixon & Tierney Constr. Co.* (1967) 248 Cal.App.2d 821, 825, 830-831 [57 Cal.Rptr. 48]; *Pastor* v. *Younis* (1965) 238 Cal.App.2d 259, 260 [47 Cal.Rptr. 684].)[4] Allowing fraud actions for damages resulting from such misrepresentations complements the ability of beneficiaries to recover damages from trustors or third persons who tortiously injure real property security or impair the value of that security by "bad faith" waste. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 598, fn. 3; *American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 614, fn. 2; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d at p. 139.) However, because the Lehmans' alleged misrepresentations were totally unrelated to the value of First Federal's real property security, the rule allowing actions for fraud damages under the facts of *Glendale Federal*

---

[4]First Federal also relies on *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615 [180 Cal.Rptr. 342]. The trustor's alleged misrepresentations in *Shepherd* did not concern the value of the real property security. (*Id.,* at pp. 621, 626.) Nonetheless, *Shepherd* states: "Finally, [the beneficiary] argues that [the trustor's] conduct in transferring his interest in the property to [his co-trustor] shortly after the refinancing was completed constitutes fraud, and that a deficiency judgment ought to be allowed on that basis. If [the beneficiary] can make out a case of fraud against [the trustor], his proper remedy is an action for fraud, and a deficiency judgment will not lie. [Citations.]" (*Id.,* at p. 626.) *Shepherd,* however, relies for this statement on *Glendale Federal* and two other cases which would allow a beneficiary to recover fraud damages from third person vendors who misrepresent the value of the real property security. (*American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611, 614-615 [68 Cal.Rptr. 453, 440 P.2d 933]; *Snelson* v. *Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 257 [84 Cal.Rptr. 800]; see also Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 6.45, p. 307.) Because it is unsupported by the authority on which it relies, we respectfully decline to apply *Shepherd's* erroneous statement to the facts of this case.

and the cases on which it relies does not apply to this case. Phrased differently, since there is no causal relationship between the alleged fraud and the damages sustained, this case does not fall within the holdings of the foregoing authorities.

Lacking the essential causal nexus, we agree with the lower court's assessment that First Federal's fraud cause of action represents an improper attempt to obtain a deficiency judgment through circumvention of applicable antideficiency statutes. ■ "The general rule is that it is an abuse of discretion to sustain a demurrer without leave to amend unless the complaint shows that it is incapable of amendment. [Citation.] But it is also true that where the nature of plaintiff's claim is clear, but under substantive law no liability exists, leave to amend should be denied, for no amendment could change the result. [Citations.]" (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942-943 [143 Cal.Rptr. 255].) The lower court acted within its discretion in sustaining Lehman's demurrer without leave to amend.

*Disposition*

The order of dismissal is affirmed.

Staniforth, J., concurred.

**COLOGNE, Acting P. J.**—I must respectfully dissent.

The courts and commentators who have addressed the issue have been consistent in stating California's antideficiency statutes do not bar an action for fraud because the remedy is one in tort and not an action on the note and deed of trust.

Hetland, California Real Estate Secured Transactions (Cont.Ed.Bar 1970) section 6.41 at page 300, states "[n]either CCP 580b nor any other deficiency section offers the trustor any defense to an action by the mortgagee or beneficiary for fraud."

In *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, at pages 138 to 140 [135 Cal.Rptr. 802], the court faced with an action by Glendale for fraud after a nonjudicial foreclosure, held: "The defense of sections 580b and 580d proscribing deficiency judgments is not available to the trustor as a defense to an action by the beneficiary for fraud. [Citations.] The statutes only proscribe deficiency judgments; an action for damages for fraud is not one for a deficiency judgment.

"The statutory provisions barring deficiency judgments were not intended to immunize a trustor or a third person who tortiously injures the mortgagee's security interest. A mortgagee whose secured interest has been impaired by tortious conduct of a third person is not barred by the antideficiency statutes from recovering damages for such impairment of security. [Citations.]" (*Id.*, at p. 139.)

*Kass* v. *Weber* (1968) 261 Cal.App.2d 417, at page 422 [67 Cal.Rptr. 876], reached the same legal conclusion, holding the vendor could rescind the promissory note secured by a deed of trust and recover in fraud. The court said: "It is clear that the purposes of sections 580a, 580d and 725a et seq., are in no way frustrated by allowing the creditor to rescind for fraud and to recover his damages resulting from that fraud. Plaintiff in the case at bench did not receive a double recovery since she was required to tender and did tender a quitclaim deed to the property. Further, the words of section 725a specifically refer to recovery on a debt and the words of section 580d specifically refer to judgments on a deficiency on a note; therefore there is nothing in the express language of those sections to preclude recovery for rescission which is not a recovery on a debt nor a deficiency judgment on a note.

"One or more of the above code sections has been held not a bar to various actions that were not for deficiency judgments. An unlawful detainer action was not barred by sections 726 or 580d. [Citation.] In *Freedland* v. *Greco* (1955) 45 Cal.2d 462 . . ., held that Code of Civil Procedure sections 580b and 580d only refer to deficiency judgments on a principal obligation after sale under trust deed as distinguished from an endorser's liability." The court reached the same result in *Baumrucker* v. *American Mortgage Exchange, Inc.* (1967) 250 Cal.App.2d 451, at page 460 [58 Cal.Rptr. 677].

I cannot conceive the Legislature intended to immunize a party from fraudulent acts by the relief afforded in sections 580b, 580d and 726. We have long recognized these statutes were enacted during the depression years when foreclosures occurred and the property was marketed at a depressed price leaving the mortgagor liable to his vendor or lender for the deficiency. (See *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 869-870 [161 Cal.Rptr. 342]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d 101, 139; *Kass* v. *Weber, supra,* 261 Cal.App.2d 417, 422.)

The action here is for damages resulting from the fraudulent acts in securing the loan, not the result of a depressed market price. The misrepresentations made to obtain a loan can have far-reaching effects not relating in the contract undertaking. The majority would turn its back on the fraud-

ulent representations used to secure a loan contract not otherwise acceptable to the lender. Company policy and government regulation requiring the loan be for habitation by the purchaser and that the buyer have a substantial amount of his own money in the venture are important considerations. These are terms designed to avoid the likelihood of default. No lender likes to be going through foreclosure sales even if it comes out whole. Such defaults impose burdens and ill will contrary to good business practice. Government requirements in its guaranteed loans in this area are intended as a protection to assure the buyer has the ability to complete his undertaking, thus avoiding default. I can foresee many kinds of damages to the lender flowing from the fraudulent avoidance of these requirements. The damages have been pleaded in general terms and, if anything more is desired, the plaintiff should be allowed to amend.

If we were to hold borrowers may lie with impunity to the lender to secure a loan secured by a deed of trust and avoid liability under the antideficiency statutes, we would undermine the effectiveness of the banking regulation practices which seek to protect depositors and the banking industry without consequent benefit to the public. The effect on the bank and its officers can have devastating effect on its reputation if the number of foreclosures mounts. Investors, depositors and the guarantors of notes will not view lightly the prospect of management's loan practices if defaults are not avoided.

Finally, I must respectfully point out, too, if the bank is bound by its "election of remedies," i.e., trustee's sale, there is no showing here it was aware of the existence of the fraudulent representation at the time of the "election." How can there be a proper election where one is not in possession of all the facts?

I would reverse and remand.

A petition for a rehearing was denied September 17, 1984, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied November 21, 1984. Mosk, J., and Grodin, J., were of the opinion that the petition should be granted.