[No. B022883. Second Dist., Div. Five. Nov. 23, 1987.]

LASSAR & GROSS INTERNATIONAL, INC., Plaintiff and Appellant, v.
RICHARD G. DUNHAM et al., Defendants and Respondents.

**COUNSEL**

Wilbur E. Quint for Plaintiff and Appellant.

George L. Rogers and Rogers & Hartley for Defendants and Respondents.

## OPINION

**HASTINGS, J.\*** —Plaintiff Lassar & Gross International Inc., appellant, appeals from a judgment entered in favor of defendants, Richard G. Dunham et al., respondents, following the granting of respondents' motion for summary judgment. The complaint alleged fraud and misrepresentations involving the execution and sale of second deeds of trust. The court granted the summary judgment in favor of respondents relying solely on *First Fed. Sav. & Loan Assn. of Phoenix* v. *Lehman* (1984) 159 Cal.App.3d 537 [205 Cal.Rptr. 600], which held that California's antideficiency statutes (Code Civ. Proc., §§ 580b, 580d and 726) barred an action for fraud where the property was sold pursuant to a nonjudicial foreclosure sale. We find that the court improperly relied on *Lehman* under the facts of this case and reverse.

Appellant alleged in its complaint a fraudulent scheme summarized as follows: During the year 1981 Jansvu Properties, Inc. (Jansvu) had for sale certain condominium units in the City of La Mirada. Rick Annigoni (Annigoni), president and principal of Jansvu, entered into a conspiracy with Richard G. Dunham (Dunham), a real estate broker, to sell the condominium units. The sales price of each unit would be inflated to reflect a cash down payment, and the loan documents executed by the buyers would reflect the fictitious cash down payments. Dunham would procure buyers who would falsely represent their intentions to personally occupy the condominiums. The buyers would execute and deliver to Jansvu a promissory note secured by a second deed of trust (hereinafter second trust deed notes) in a sum equal to or greater than the fictitious cash down payment. Jansvu and Dunham would then sell at a discount to third parties these second trust deed notes.

The complaint alleged the following specific transaction: Edwin H. Watts, Jr. and Kathleen Watts (Watts) were named as defendants. Appellant claims that Dunham procured Watts, who in consideration of a fee paid by Dunham executed documents as alleged in the above conspiracy. No cash down payment was made, and Watts closed escrow by paying the entire purchase price by promissory notes. An institutional lender received a promissory note secured by a first trust deed (hereinafter first trust deed note), and Jansvu received the second trust deed note for $33,550. Appellant purchased this second trust deed note from Jansvu for $20,000 after Jansvu had represented to appellant that Watts was occupying the property and that Watts had an equity therein of approximately $33,550. This false

---

\* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

representation was relied upon by appellant who would not have purchased the note otherwise. Watts defaulted under the first trust deed note and the institutional lender foreclosed, thus rendering appellant's security interest in the property valueless.

Appellant made identical allegations as to other defendants, except that other second trust deed notes represented different amounts.

Defendants' motion for summary judgment, in effect, claimed they were entitled to such a judgment as a matter of law because appellant's complaint was an attempt to circumvent the antideficiency legislation, *supra,* and the clear holding in *Lehman, supra,* 159 Cal.App.3d 537, that such an action was improper. The trial court agreed and this appeal followed.

In *First Fed. Sav. & Loan Assn.* v. *Lehman, supra,* 159 Cal.App.3d 537, the Lehmans applied to First Federal for a $150,000 loan to purchase a single family residence in San Diego for a price of $212,000. The Lehmans represented to First Federal that the $62,000 difference between the loan amount and the purchase price would be paid by their $37,000 down payment plus secondary financing not to exceed $25,000. They also represented that the residence would be owner-occupied. First Federal, relying on these representations, made the loan which was secured by a first trust deed note on the property.

After the close of escrow, the sellers returned the Lehmans' down payment to them and accepted a $40,000 promissory note secured by a third deed of trust on the residence. The Lehmans treated the residence as investment property and did not occupy it. Eventually the Lehmans sold the residence and payments stopped on the first trust deed note. First Federal initiated nonjudicial foreclosure proceedings, and the property was sold.

Subsequently, First Federal sued the Lehmans and others. The first cause of action alleged that the Lehmans fraudulently induced First Federal to loan them the $150,000. As damages it sought unspecified sums for its loss of use of the $150,000 and for the possible loss of some or all of that amount. The Lehmans demurred on the grounds that First Federal's cause of action was barred by Code of Civil Procedure sections 580b and 580d.[1]

---

[1]Section 580b provides in part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser."

These sections bar any deficiency judgment for amounts due under a "purchase money" trust deed note, when the beneficiary elects to foreclose by exercising the power of sale in the note and trust deed.

First Federal argued that it was seeking damages for fraud rather than a deficiency judgment. The trial court disagreed and sustained the demurrer. A divided Court of Appeal (Fourth Dist., Div. One) affirmed. The court held that the Lehmans' alleged misrepresentations were totally unrelated to the value of the real property securing First Federal's trust deed note, therefore there was no causal relationship between the alleged fraud and the damages sustained. It concluded that lacking the essential causal nexus First Federal's cause of action represented an improper attempt to obtain a deficiency judgment through circumvention of applicable antideficiency statutes.[2]

■■■ Returning to our present case, the first question is whether *Lehman* can be distinguished to the extent that it is not controlling. *Lehman* deals with a first trust deed "purchase money" loan that was induced by fraudulent misrepresentations. Here, we are dealing with an alleged fraudulent scheme that is designed to induce the purchase of second trust deed notes. We can see a practical and substantial difference between the two. While there may be a few exceptions, most "purchase money" lenders are institutions or sometimes individuals that independently appraise the property before making the loan. Seldom is a loan made for 100 percent of the value of the land and construction costs. There generally remains an equity of 10 to 20 percent or more in the property after the loan to give the lender a cushion of protection against a decrease in the properties' value. This is most important because the antideficiency laws (*supra*) prevent the first trust deed (or mortgage) lender from recovering any deficiency due on the loan should the returns from the foreclosure sale be less than the amount due on the loan. We would agree that prudent second trust deed note buyers should also be knowledgeable of the value of the property securing the loan. ■■■ A foreclosure on a purchase money first trust deed note can extinguish a note secured by a second deed of trust. (*Brown* v. *Jensen* (1954)

Section 580d provides in part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust."

[2]First Federal had relied on *Glendale Fed. Savings & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101 [135 Cal.Rptr. 802], and other cases cited therein, holding that an action for damages for fraud is not one for a deficiency judgment. The court, however, found that the *Glendale Federal* case and others cited involved alleged misrepresentations regarding or adversely affecting the value of the real property security. The dissent (Cologne, Acting P. J.) criticized this distinction saying that the majority had turned its back on the fraudulent representations used to secure the loan contract.

41 Cal.2d 193 [259 P.2d 425], cert. den., 347 U.S. 905 (1954) [98 L.Ed 1064, 74 S.Ct. 430].) However, it is now common knowledge that second trust deed notes are highly negotiable and are sold in large numbers. This is not nearly so prevalent with "purchase money" first trust deed notes. The buyers of second trust deed notes do not generally obtain independent appraisals of the property securing the notes as the original lenders do. This cost factor alone would act as a deterrent to the trading of these notes. We are not condoning this practice but are merely disclosing one of the practical distinctions between the safety margins of a first trust deed note and a second trust deed note. This distinction becomes important, even crucial, when we consider the facts of this case and the facts of *Lehman*.

■ Clearly, the scheme or conspiracy alleged by appellant in its complaint was designed to mislead the purchasers of second trust deed notes as to their value. The greater the investment by the buyer of the property (represented by the down payment) the better the security. Occupancy of the property by the original owner generally insures proper maintenance which helps to preserve the property value. It is therefore apparent that the misrepresentations alleged by appellant did pertain to the value of the second trust deed notes. Evidence was presented by appellant to the trial court that the fraudulent representations would have a greater adverse effect on second trust deed notes than on first trust deed notes. We thus see a causal connection between the alleged misrepresentations and the sales of the second trust deed notes.

There is another compelling reason for reversing the judgment. If we allow the antideficiency statutes to become a shield to this type of fraudulent scheme similar conspiracies will multiply over night. If the first trust deed beneficiary elects to foreclose on the property, the second trust deed purchaser's only recourse is to buy the overly inflated property at the foreclosure sale. On many occasions this would be impracticable and even unfair. Other avenues of relief, such as suing for fraud, must be available.

For the above reasons we conclude *Lehman* is not controlling. Should, however, an argument be made that the reasoning of *Lehman* equally applies to second trust deed notes, we believe *Lehman* has now been modified so that it has little applicability to fraud cases. In 1985 the Legislature enacted Finance Code sections 779, 7459, 7460 and 15102 to permit banks, savings and loan institutions, and credit unions to maintain an action for damages, including punitive damages against a borrower based on fraud when the fraud induced the loan. *Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505, 1513-1514 [239 Cal.Rptr. 59], comments on this legislation, as follows: "The legislative history of these various enactments makes clear the Legislature's disapproval of the judicial use of the antideficiency

statutes to insulate mortgagors from liability in fraudulently induced loan transactions. We also think it obvious that the public policies served by the antideficiency statutes are in no way frustrated by permitting a lender to pursue a separate action against a borrower for fraud. The statutes essentially allow an action for fraud in those situations where a creditor-mortgagee would have been able to obtain a deficiency judgment following a judicial foreclosure. The damages recoverable in such actions remain a matter of proof and will be limited to the extent a lender can establish it was harmed by the fraudulent misrepresentation. The mortgagor, therefore, retains the protection of the antideficiency statutes in all instances except those involving fraud." Prior to *Lehman* substantial case law[3] had established that the defense of section 580d was not a defense to an action for fraud. Recently we affirmed this concept in *Manson v. Reed* (1986) 186 Cal.App.3d 1493 [231 Cal.Rptr. 446], although the opinion did not discuss *Lehman*. We thus conclude that *Lehman* does not apply under any theory to the facts of this case.

As stated earlier respondents' motion for summary judgment was based on the reasoning of *Lehman*. The fraud allegations in the complaint were not seriously challenged. Declarations were filed by respondents from some of the named defendants denying the misrepresentations, but they were not sufficient to support a summary judgment on the merits. Triable issues of fact clearly remained.

The summary judgment is reversed. Costs to appellant.

Feinerman, P. J., and Boren, J., concurred.

A petition for a rehearing was denied December 17, 1987, and respondents' petition for review by the Supreme Court was denied February 4, 1988.

---

[3] *Shepherd v. Robinson* (1981) 128 Cal.App.3d 615, 656 [180 Cal.Rptr. 342]; *Glendale Federal Savings & Loan Association v. Marina View Heights Dev. Co., supra,* 66 Cal.App.3d 101, 139; *Kass v. Weber* (1968) 261 Cal.App.2d 417, 422-433 [67 Cal.Rptr. 876]; *Baumrucker v. American Mortgage Exchange, Inc.* (1967) 250 Cal.App.2d 451, 459-460 [58 Cal.Rptr. 677]; *Joanaco Projects, Inc. v. Nixon & Tierney Constr. Co.* (1967) 248 Cal.App.2d 821 [57 Cal.Rptr. 48].