**In re Gus Kit FRANKLIN, a/k/a Gus Franklin, Gus K. Franklin, d/b/a Allied Tree Company, Allied Enterprises, Inc., Allied Tree and Lawn Service and Susan Franklin, Debtors.**

**COMMONWEALTH FINANCIAL CORPORATION, Plaintiff/Appellant,**

**v.**

**Gus Kit FRANKLIN, a/k/a Gus Franklin, Gus K. Franklin, d/b/a Allied Tree Company, Allied Enterprises, Inc., Allied Tree and Lawn Service and Susan Franklin, Defendants/Appellees.**

BAP No. CC–87–1224, JMoV.

Bankruptcy No. SA–84–05072 (PE).

Adv. No. SA–85–0224.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 21, 1988.

Decided June 6, 1988.

John A. Belcher, Richards, Watson & Gershon, Los Angeles, Cal., for plaintiff/appellant.

Andrew K. Mauthe, Speers, Dana, Teal & Balfour, Costa Mesa, Cal., for defendants/appellees.

## OPINION

Before JONES, MOOREMAN and VOLINN, Bankruptcy Judges.

JONES, Bankruptcy Judge:

The creditor, Commonwealth Financial Corporation, appeals a bankruptcy court order granting summary judgment in favor of the Debtor, Gus Kit Franklin, dismissing Commonwealth's nondischargeability complaint. We REVERSE.

### FACTS

Over the course of 1981 and 1982 the Appellant, Commonwealth Financial Corporation, loaned the Debtor, Gus Franklin, d/b/a Allied Tree Enterprises, approximately $580,000. Pursuant to a security agreement dated June 22, 1981, Commonwealth was granted a security interest in all of Allied's property including accounts receivable, inventory and equipment. The amount of the credit extended by Commonwealth was calculated as a percentage of the accounts receivable securing the loan. Allied's indebtedness to Commonwealth was personally guaranteed by Franklin.

On June 21, 1982, Gus Franklin and his wife, Susan Franklin, conveyed to Commonwealth a security interest in their residence. Commonwealth's deed of trust on the residence was subject to various prior trust deeds totalling approximately $198,-000. At the time the deed of trust was executed, Franklin was already indebted to Commonwealth in the amount of $536,-610.27. Pursuant to a letter agreement (the "1982 agreement") accompanying the deed of trust, it appears that the deed of trust was intended, in part, to secure an additional $28,000 advance by Commonwealth to Franklin and, in part, to serve as additional security for the original advances made by Commonwealth.

Sometime prior to June 1983, Commonwealth learned that most of the accounts receivable securing its loans to Franklin and Allied had been fabricated by Franklin and his sister. Commonwealth learned that the businesses identified on the purchase orders and invoices were nonexistent entities created by Franklin, and that the signatures appearing on the purchase orders had been forged.[1] On June 27, 1983, Commonwealth filed a cross-complaint[2] against Franklin, his sister and others in Los Angeles Superior Court, alleging fraud and seeking judicial foreclosure.

On July 26 1984, while the state court action was pending, Avco Financial Services, Co., the senior deed of trust holder on the Franklins' residence, held a foreclosure sale pursuant to the power of sale clause contained in its deed of trust. Commonwealth purchased the property at the foreclosure sale for $58,100. On December 31, 1984, the Franklins filed a petition for relief under Chapter 7 of the Bankruptcy Code.

On March 22, 1985, Commonwealth filed a nondischargeability complaint pursuant to 11 U.S.C. sections 523(a)(2) and (a)(4), alleging fraudulent concealment, fraud and misrepresentation. Prior to trial, the Franklins brought a motion for summary judgment alleging that Commonwealth's dischargeability action was barred by the California anti-deficiency legislation. Specifically, the Franklins argued that the relief sought by Commonwealth in its dischargeability action was essentially a deficiency judgment, and that Commonwealth had failed to bring its action within three months of the foreclosure sale, as it was required to do under California Code of Civil Procedure section 580a. The Franklins further argued that Commonwealth was barred by California Code of Civil Procedure section 580d which bars a deficiency judgment when the subject real property is sold under a power of sale clause, as was the case here. In opposition, Commonwealth argued that the California antideficiency legislation does not provide a defense to an action based on fraud.

---

1. Franklin later admitted these facts and stipulated to them at a 2004 examination conducted on July 1, 1985, during the course of his bankruptcy.

2. Both parties refer to Commonwealth's state court action against the Franklins as a "cross-complaint". The record does not indicate, however, the nature of the underlying action.

The bankruptcy judge granted the motion for summary judgment finding that both the state court action and the nondischargeability complaint "essentially" seek deficiency judgments and, as such, are barred by California Code of Civil Procedure sections 580a and 580d. Commonwealth timely appealed.

## STANDARD OF REVIEW

A reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *In re Stephens,* 51 B.R. 591, 594 (9th Cir. BAP 1985). A grant of summary judgment is reviewed de novo. *In re Center Wholesale, Inc.,* 788 F.2d 541, 542 (9th Cir.1986).

## DISCUSSION

Pursuant to California Code of Civil Procedure section 580a, a proceeding for a deficiency must be initiated within three months after either a private sale under a power of sale or a judicial sale, and the recovery may not exceed the difference between the amount of the indebtedness and the fair market value of the property at the time of the sale.[3] Section 580d bars a deficiency judgment after a foreclosure sale pursuant to a power of sale clause.[4] As a general rule, neither the provisions of sections 580a nor 580d apply to a sold out junior lienor. *Roseleaf Corp. v. Chierighino,* 59 Cal.2d 35, 27 Cal.Rptr. 873, 378 P.2d 97, 99 (1963). Nor do the provisions of section 580d apply to a junior lienor who purchases at a foreclosure sale. *Walter E. Heller Western, Inc. v. Bloxham,* 176 Cal. App.3d 266, 221 Cal.Rptr. 425, 429 (1985). However, section 580a does apply to a junior lienor who purchases at a senior sale. *Bank of Hemet v. United States,* 643 F.2d 661, 669 (9th Cir.1981) ("not to apply section 580a to [a purchasing junior lienor] would create a distinct possibility of excess recovery ..."); *Heller,* 221 Cal.Rptr. at 429.

Here, the bankruptcy court construed Commonwealth's dischargeability action as one for a deficiency, and concluded that the action was barred by section 580a because the dischargeability complaint was not filed until March 2, 1985, approximately eight months after the foreclosure sale. In addition, the court, relying on *First Federal Savings & Loan Ass'n. v. Lehman,* 159

---

**3.** Section 580a provides in relevant part:

Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale.... The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage. Any such action must be brought within three months of the time of sale under such deed of trust or mortgage.

**4.** Section 580d provides in relevant part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust...." Although section 580d might appear to supercede section 580a, the California legislature has never repealed section 580a. Section 580a's continued existence "raises the question [of] whether it is intended to have a significance independent of section 580d." *Walter E. Heller Western, Inc. v. Bloxham,* 176 Cal.App.3d 266, 221 Cal.Rptr. 425, 428, n. 5, (1985). (quoting California Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1985) (4.18, p. 153). Both the instant case and the *Heller* case indicate that section 580a can have significance independent of section 580d. *See also Hemet,* 643 F.2d at 668 (treating section 580a as though not superceded by section 580d).

Cal.App.3d 537, 205 Cal.Rptr. 600 (1984), rejected Commonwealth's argument that its fraud claim was not barred by the anti-deficiency legislation, because *Lehman* requires that in order for a fraud action to be excepted from the anti-deficiency legislation, the misrepresentations must relate to the value of the real property security.

In *Lehman,* the Lehmans had secured a purchase money loan from First Federal after misrepresenting their intent to occupy the premises, the amount of their cash down payment, and the extent of secondary financing. The Lehmans never occupied the property and, although they made several payments on the loan, they sold the property to a third party who defaulted on the loan. First Federal initiated nonjudicial foreclosure proceedings and the property was sold. Following the foreclosure, First Federal sought damages for fraud from the Lehmans. The Lehmans moved for summary judgment on the grounds that the Code of Civil Procedure sections 580b and 580d barred the action.[5] First Federal, relying on *Glendale Federal Savings and Loan Ass'n v. Marina View Heights Development Co.*, 66 Cal.App.3d 101, 135 Cal. Rptr. 802 (1977), argued that it was seeking damages for fraud rather than a deficiency judgment. The trial court disagreed and granted the motion for summary judgment. A divided court of appeal affirmed, holding that the action was, in effect, an action for a deficiency since First Federal sought to recover the unpaid balance of the loan less the amount bid at the foreclosure sale. The court refused to follow *Glendale,* noting that it and each of the cases it cited involved alleged misrepresentations regarding the value of the real property security. 205 Cal.Rptr. at 602. The court concluded that since the alleged misrepresentations were unrelated to the value of the real property securing the first deed of trust, there was no causal relationship between the alleged fraud and the damages sustained. 205 Cal.Rptr. at 603.

On appeal, Commonwealth argues that the court's reliance on *Lehman* was error

because *Lehman* has been substantially modified by subsequent decisions, and it is no longer required under California law that the misrepresentations relate to the value of the real property security. We agree. In *Manson v. Reed,* 186 Cal.App.3d 1493, 231 Cal.Rptr. 446 (1986), the buyers had induced the sellers to sell real property on a "cash back to buyer" basis by fraudulently representing that they intended to substantially remodel the house. The buyers took cash out of the sale and gave a second trust deed to the sellers. When the buyers defaulted, the first deed of trust holder foreclosed on the property, leaving the sellers holding their worthless second trust deed. The sellers prevailed in a fraud action against the buyers and the buyers appealed, arguing that the action was barred by California Code of Civil Procedure section 580b. The court of appeal affirmed, holding that a recognized exception to the anti-deficiency legislation is a suit for fraud. The court noted:

> The distinction is that a suit for fraud is a completely separate remedy than a suit on the promissory note secured by the deed of trust. This action is not a suit on the note. This suit raises the issue of fraud in the inducement and such was found by the trial court. It would be wrong to apply a bar of recovery against plaintiff based upon a statute relating to a transaction that was fraudulently induced. To do so would be to condone the fraud.

231 Cal.Rptr. at 451. The court further noted:

> Appellant argues that the fraud must relate to value [sic] of the property and the evidence does not support this. We disagree. One of the representations believed by the Mansons was that substantial remodeling would be done which would increase the value of the house. *Also, the fraud relating to promise to pay on the promissory note, while not relating to the value of the property, is*

---

5. Section 580b bars any deficiency judgment after a sale under a purchase money mortgage

or trust deed.

*also sufficient to avoid the bar of section 580b.*

231 Cal.Rptr. at 451–452, n. 1 (emphasis added). Thus, the *Manson* court, although not specifically addressing *Lehman,* declined to follow *Lehman's* requirement that the fraud relate to the value of the real property security.

In *Guild Mortgage Co. v. Heller,* 193 Cal.App.3d 1505, 239 Cal.Rptr. 59 (1987), the defendant buyers had obtained a purchase money loan from the plaintiff, representing that they would retain the property as an investment, and that they alone would be responsible for making the mortgage payments. Unaware that the defendants had assumed ownership without making the agreed-to down payment, the plaintiff sold the note to the Federal Home Loan Mortgage Corporation ("FHLMC"). Immediately following the close of escrow, the defendants transferred title to the Lakes, who were then leasing the property from the original sellers. Neither the defendants nor the Lakes made payment on the loan, and the first deed of trust holder initiated judicial foreclosure proceedings and acquired title to the property. Subsequently, the plaintiff repurchased the property [6] and resold it, suffering a loss in excess of $50,000. The plaintiff brought an action for damages against the defendants.

The trial court, relying upon *Lehman,* held that the anti-deficiency statutes protected the defendants because their misrepresentations did not relate to the value of the security. The court of appeal reversed, noting:

> Neither the purpose nor intent of the anti-deficiency statutes is frustrated by allowing a creditor to recover damages for fraud in the inducement of a loan. We cannot believe that the legislature

intended to immunize a mortgagor from liability for any and all misrepresentations concerning his financial stability or plans for the property made in obtaining a loan in the first instance. *Nor do we read Lehman as being that persuasive.*

*Id.* 239 Cal.Rptr. at 64.

The court further noted that in 1985 the California legislature, "intending to curtail fraud in the real estate market and to vitiate the holding in *Lehman,*" enacted new legislation pursuant to which banks, savings and loan associations, and credit unions may maintain actions for damages against borrowers when the loan has been fraudulently induced. Although the new legislation was inapplicable because the lawsuit had been filed before it was enacted,[7] the court noted that its legislative history made "clear the Legislature's disapproval of the judicial use of the anti-deficiency statutes to insulate mortgagors from liability in fraudulently induced loan transactions." 239 Cal.Rptr. at 65. The court concluded:

> In light of the foregoing, we are convinced that plaintiff may prosecute its action for fraud in the inducement of the loan *even though the purported misrepresentations did not directly relate to the value of the property securing the debt.*

239 Cal.Rptr. at 65 (emphasis added).

*Lehman* was further discredited in *Lassar and Gross International v. Dunham,* 196 Cal.App.3d 496, 241 Cal.Rptr. 854 (1987). In that case, the alleged fraudulent scheme had induced the large scale execution and purchase of second trust deed notes. The trial judge had granted summary judgment in favor of the defendants, relying upon *Lehman.* The court of appeal reversed, holding that *Lehman* was inapplicable to transactions involving second trust

---

**6.** Under FHLMC regulations, the agency may require a mortgage broker to repurchase the note when "[t]he borrower[s] or any other party to the transaction has made false representations in conjunction with such transaction." *See* FHLMC, *Seller's and Servicer's Guide,* sections 0512, 6208(a).

**7.** The court also noted that the plaintiff, a mortgage banker and not a state or federally chartered savings and loan or credit union, was "technically not embraced in the new legislation." It left open the question, however, of whether the statute would be applied to mortgage bankers as well. *Id.* at 64, n. 9.

deeds.[8] The court further noted:

> There is another compelling reason for reversing the judgment. If we allow the anti-deficiency statutes to become a shield to this type of fraudulent scheme, similar conspiracies will multiply overnight. . . .
>
> For the above reasons we conclude *Lehman* is not controlling. Should, however, an argument be made that the reasoning of *Lehman* equally applies to second trust deed notes, *we believe Lehman has now been modified so that it has little applicability to fraud cases.*

241 Cal.Rptr. at 857 (emphasis added). The court concluded:

> Prior to *Lehman* substantial case law had established that the defense of section 580d was not a defense to an action for fraud. Recently we affirmed this concept in *Manson v. Reed,* although the opinion did not discuss *Lehman.* We thus conclude that *Lehman* does not apply under any theory to the facts of this case.

*Id.* 241 Cal.Rptr. at 857 (citation omitted).

 Recent California cases clearly disapprove of the use of the anti-deficiency legislation to insulate borrowers from liability in fraudulently induced loan transactions. It is no longer required that the alleged misrepresentations relate to the value of the real property security. Therefore, although Franklin's misrepresentations went to the value of the accounts receivable securing the loan and not the real property, Commonwealth's nondischargeability action is not barred by section 580a. Accordingly, the order granting summary judgment in reliance upon *Lehman* was erroneous.

For the foregoing reasons, we REVERSE the grant of summary judgment in favor of Franklin and REMAND the matter for trial.

---

8. The court reasoned that second trust deed notes are "highly negotiable and are sold in large numbers" and that the buyers of second trust deed notes generally do not obtain inde-pendent appraisals of the property securing the note. Thus, the "safety margin" for buyers of second deeds of trust is less than that for first deed of trust holders. 241 Cal.Rptr. at 856.